IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

SHEYLA ACEVEDO, et. al.

On behalf of herself and all others
similarly situated;

                    Plaintiffs,

v.

C&H PRECISION WEAPONS, LLC, et. al.      Case No.: 4:22-cv-00152-RSB-CLR

                   Defendants.

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF ACTION

COME NOW Plaintiffs Sheyla Acevedo; Laura Bragg; and Jaimee Harrison and Defendants, Defendants C&H Precision Weapons, LLC; Dot Ops, Inc.; Michael B. Holly; and Beau Buchanan Holly having entered into a Settlement Agreement for the Settlement of FLSA Claims (the "FLSA Settlement"), a copy of which is attached hereto as Exhibit "A", and jointly seek Court approval of the FLSA Settlement and the dismissal of this action with prejudice. The Parties respectfully request that this FLSA Settlement be approved for the reasons that follow:

1.

Plaintiffs filed a lawsuit in United States District Court for the Southern District of Georgia on June 20, 2022, Case No. 4:22-cv-00152-RSB-CLR, (the "Lawsuit") alleging that Defendants owed them additional compensation for unpaid overtime from June 15, 2020 through April 24, 2021 ("Covered Period"), under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 291 et seq. (Doc. 1, *Complaint*).

2.

Additionally, Plaintiffs have each asserted other claims not arising under the FLSA ("Plaintiffs' non-FLSA claims") against Defendants C&H Precision Weapons, LLC and Dot Ops, Inc. and non-party C & H Precision LLC, some of which are currently pending with the Equal Employment Opportunity Commission.

3.

Defendants deny that they are liable to Plaintiffs under the FLSA or any other law.

4.

The Parties agree that there is a bona fide dispute as to whether Plaintiffs were properly paid for all hours worked and whether Plaintiffs are entitled to overtime compensation.

5.

Counsel for the Parties briefly met on June 27, 2022 and agreed to discuss the possibility of settling the Parties' dispute. Thereafter, the Parties exchanged their respective positions and facilitated the exchange of information and settlement discussions over the next 2 weeks.

6.

During the first part of the Covered Period from June 15, 2020 through approximately pay date December 4, 2020, the Defendants did not utilize a time clock. During the second part of the covered period, from pay date December 11, 2020 through December 24, 2020, Plaintiffs were paid straight time for hours worked over forty (40), but not the overtime premium. During the third part of the covered period, the Plaintiffs were misclassified, and thus accurate time records of hours worked by the Plaintiff were not kept. During Plaintiff Harrison entire employment, she alleges that was misclassified as salary exempt and thus accurate time records of her hours worked were not kept.

7.

The Parties were able to exchange payroll records for the Covered Period and the payroll records do not adequately demonstrate whether Plaintiffs were not exempt employees, and whether Defendants were required to pay them overtime during the Covered Period. Additionally, Plaintiffs did not document and accurately record their actual hours worked. Therefore, during the Covered Period, Plaintiffs rely on estimates they each worked approximately five (5) hours per week, as they allege they regularly arrived thirty (30) minutes early and left thirty (30) minutes late daily. (Doc. 1, *Complaint*, ¶50).

**Plaintiff Acevedo**:

8.

During the Covered Period, Ms. Acevedo was employed by Defendants from approximately September 21, 2020 to April 30, 2021.

9.

Ms. Acevedo worked from September 21, 2020 through on or about December 18, 2020 and during this time period Defendants had no time clock. During this time period, Plaintiff Acevedo alleges she worked approximately an additional 5 hours of per week. Throughout this time period, Plaintiff Acevedo was not paid overtime and was paid no more than $520.00 per week based on 40 hours at a rate of $13.00 per hour. Ms. Acevedo was paid this set amount of $520.00 per week, irrespective of the hours she worked in any given week. Taking this into consideration, her regular rate of pay was $13.00 per hour. Ms. Acevedo alleges she regularly and consistently worked at least 45 hours per week. Ms. Acevedo is due 5 hours of pay at the overtime rate of time and a half ($19.50) for approximately 10 weeks from September 21, 2020 through on or about December 18, 2020. Ms. Acevedo is due $975.00 for this 10-week period.

10.

During the Covered Period, Ms. Acevedo was not paid ½ time for the hours over 40 for the week ending November 20, 2020, and is due 6 hours at $6.50 per hour, or an additional $39.00.

11.

For the week ending December 18, 2020, Ms. Acevedo worked 41.5 hours and is due 1.5 hours at the overtime rate of $19.50 and $13.00 per hour for .75 hours, for a total of $39.00.

12.

Thereafter, on or about the pay date starting on January 8, 2021 through February 19, 2021, Plaintiff Acevedo alleges that Defendants misclassified her as salary exempt and paid her a salary of $580.00 per week based on a regular rate of $14.50 per hour. Ms. Acevedo was paid this set amount of $580.00 per week, irrespective of the hours she worked in any given week during this 6-week misclassification period, Ms. Acevedo alleges she averaged approximately 5 hours of overtime per week. Ms. Acevedo is due 5 hours of pay at the overtime rate of time and a half ($21.75) for these 6 weeks, or $652.50.

13.

Ms. Acevedo was never paid time and half for hours over 40 hours per week but was only paid straight time for hours over 40 from February 26, 2021 to April 2021. During this time period, she worked 6.76 over 40 hours and is due the ½ time ($7.25) for the 6.76 hours over 40, or $49.01.

14.

Altogether, Ms. Acevedo alleges that she is due $1,754.51 in overtime damages and an equal amount in liquidated damages ($1,754.51), for a total of $3,509.02.

**Plaintiff Bragg**:

15.

During the Covered Period, Ms. Bragg was employed by Defendants from approximately June 21, 2020 to April 30, 2021.

16.

Ms. Bragg worked from June 21, 2020 through on or about December 18, 2020 and during this time period Defendants had no time clock. During this time period, Plaintiff Bragg alleges she worked approximately an additional 5 hours of overtime per week.

17.

From June 21, 2020 to week ending September 18, 2020, Ms. Bragg was paid no more than $520.00 per week based on 40 hours at a rate of $13.00 per hour. Therefore, during this time period (13 weeks), Ms. Bragg alleges she is due an additional ($19.50 x 5 hours) $97.50 per week or $1,267.50.

18.

Thereafter, from September 25, 2020 through November 27, 2020 (9 weeks), Ms. Bragg was paid no more than $580.00 per week based on 40 hours at a rate of $14.50 per hour. Therefore, during this time period (9 weeks), Ms. Bragg alleges she is due an additional ($21.75 x 5 hours) $108.75 per week or $978.75.

19.

Thereafter, from the week ending December 4, 2020 through December 18, 2020, Ms. Bragg was only paid straight time for hours over 40 hours per week and alleges she is due the ½ time for the hours she worked 14.28 and is due the ½ time ($7.25) for the 14.28 hours over 40, or $103.53.

20.

Thereafter, from January 1, 2021 through April 30, 2021 (17 weeks), Plaintiff Bragg alleges that Defendants misclassified her as being salaried exempt and paid her a salary of $600.00 per week regardless of the number of hours that she actually worked. Ms. Bragg further alleges she continued to average approximately 5 hours of overtime during this time period when her regular rate was $15.00 per hour and her overtime rate was $22.50 per hour. Therefore, she alleges she is due 17 weeks of overtime for a total of $1,912.50.

21.

Altogether, Ms. Bragg alleges that she is due $4,262.28 in overtime damages and an equal amount in liquidated damages ($4,262.28), for a total of $8,524.56.

**Plaintiff Harrison**:

22.

Ms. Harrison was employed by Defendant C&H Precision Weapons, LLC from approximately July 25, 2020 to November 6, 2020. Throughout this time period, Ms. Harrison was paid a fixed salary of $600.00 per week, irrespective of the hours she worked in any given week. Taking this into consideration, her regular rate of pay was $15.00 per hour. Ms. Harrison alleges she regularly and consistently worked at least 45 hours per week, often working from home at night.

23.

Ms. Harrison alleges she is due 5 hours of pay at the overtime rate of time and a half ($22.50) for the approximately 15 weeks.

24.

Altogether, Ms. Harrison alleges that she is due $1,687.50 in overtime damages and an equal amount in liquidated damages ($1,687.50), for a total of $3,375.00.

25.

After reviewing pay records regarding the above, Counsel for the Parties subsequently entered into arms-length settlement negotiations, exchanging a series of meaningful offers and counteroffers between their clients, resulting in this FLSA Settlement with respect to Plaintiffs' FLSA claims against all Defendants and a separate, Confidential Settlement Agreement, supported by separate consideration, with respect to Plaintiffs' non-FLSA claims against Defendants C&H Precision Weapons, LLC, Dot Ops, Inc., Michael B. Holly and Beau Buchanan Holly and non-party C & H Precision LLC.  The Parties acknowledge and agree that the claims and causes of action in the Lawsuit and with the EEOC are disputed and the Parties desire to settle such disputes to avoid the expense and uncertainty of further litigation.

26.

Counsel for the Parties recognize that any settlement of Plaintiffs' FLSA claims against Defendants must be approved by this Court pursuant to *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982).

27.

Counsel for the Parties understand that the existence of a separate, confidential settlement agreement settling non-FLSA claims, with separate consideration to be paid, is not an impediment to the settlement of the FLSA Claim.  S*ee, e.g.*, *Landfair v. Optimal Phone Interpreters, Inc.*, Case No. 612-CV-1747ORL37DAB, 2013 WL 12388629, at *3 (M.D. Fla. June 20, 2013) ("The Court does not find the existence of a separate agreement settling the ADA claim and non-FLSA claims, with separate consideration paid, to be an impediment to the FLSA settlement."); *see also Aly v. Dr. Pepper Snapple Grp., Inc.*, 18 CV 4230 (FB)(LB), 2019 WL 3388947, at *1 (E.D.N.Y. June

13, 2019), report and recommendation adopted, 18-CV-4230 (FB) (LB), 2019 WL 3388925 (E.D.N.Y. July 26, 2019) ("Plaintiff Aly also brings claims under the Americans with Disability Act, New York State Human Rights Law, and the New York City Human Rights Law. SAC at ¶¶ 3, 104–40. The parties report that they separately resolved their non-FLSA claims. ECF No. 27 at 3 n.5. Courts routinely approve bifurcated settlements in which the parties' FLSA claim undergoes court review for approval while their non-FLSA claims are resolved in a separate agreement.").

28.

The Parties respectfully submit that approval of this FLSA Settlement under the *Lynn's Food Stores, Inc.* standard is proper.

"In reviewing the settlement of a FLSA private claim, a court must 'scrutinize the settlement for fairness,' and determine that the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Jones v. FleetCor Techs. Operating Co.*, LLC, Case no. 1:16-CV-1092-TCB, 2017 WL 9401153, at *1 (N.D. Ga. Aug. 3, 2017) (citing *Lynn's Food Stores, Inc.*, 689 F.2d at 1352-53). "'If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id.* (citing *Lynn's Food Stores, Inc.*, 689 F.2d at 1354).

This case involves a bona fide controversy over whether Plaintiffs are entitled to overtime compensation and whether they in fact worked over forty (40) hours in a week.

Regardless of whether Plaintiffs were overtime exempt or not, however, Plaintiffs' estimates for the Covered Period indicate that the total amount of overtime in controversy for all Plaintiffs is approximately $7,704.29.  Even with the addition of liquidated damages in an equal

8

amount, the amount in controversy equals $15,408.58. Based on the amount in controversy, the Parties are in agreement that it is not in either of their best interests to continue to litigate this issue.

The proposed settlement payments from Defendants to Plaintiffs include the full measure of their identified damages and liquidated damages. *See* (FLSA Settlement) (Ex. A). While Defendants deny that Plaintiffs are entitled to any overtime or liquidated damages, these settlement payments would equal the amount of overtime Plaintiffs indicate they would be owed if they were entitled to any overtime. Thus, as Defendants are offering Plaintiffs what their estimate of hours worked indicate would be a 100% recovery, the Parties submit that this settlement is reasonable.

The proposed settlement also provides for the payment of $6,510.00 in attorney's fees and $402.00 in filing fees and expenses of litigation to Plaintiffs' legal counsel, Charles Herman Law, which was negotiated and agreed upon separately and without regard to the amount paid to the Plaintiffs. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

"The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Morris v. Augusta-Richmond Cty., Georgia*, Case No. 1:14-CV-196, 2017 WL 1078643, at *2 (S.D. Ga. Mar. 21, 2017). Counsel for Plaintiffs has an hourly rate of $300.00, which Counsel for Defendants will stipulate as a reasonable rate for attorneys of similar experience located in Savannah, Georgia. Counsel for Plaintiffs has provided his time records for each individual Plaintiff as Attachments "A", "B", and "C" to his *Attorney Declaration in Support of Fees* attached as Exhibit "B" to this *Motion* showing that his cumulative attorney's fees allocated to Plaintiffs' FLSA claim equal $6,510.00. Plaintiffs' costs include a $402.00 filing fee. Adding $402.00 in costs to $6,510.00 in attorney's fees equals $6,912.00. This is a multi-plaintiff case that involved factual circumstances that were unique to each Plaintiff and each Plaintiff had to be kept updated regarding the circumstances of their individual case as well as the status of the litigation as a whole. The time

records following the beginning of the drafting of the *Complaint* were all billed under Plaintiff Acevedo, the lead Plaintiff, which is why that bill is higher than Plaintiff Bragg and Plaintiff Harrison. The Parties submit that this award of fees is reasonable.

29.

Upon approval by the Court, the Parties will implement this settlement agreement by proper payments and respectfully request that the Court dismiss the action with prejudice.

Respectfully submitted, this 11th day of July, 2022.

CHARLES HERMAN LAW

/s/ Charles Herman
CHARLES HERMAN
Georgia State Bar No. 142852
*Attorney for Plaintiff*

7 East Congress Street, Suite 611A
Savannah, Georgia 31401
Telephone: (912) 244-3999
Telefax: (912) 257-7301
charles@charleshermanlaw.com

THE MURRAY FIRM

/s/ Matthew D. Adkins
Matthew D. Adkins
Georgia Bar No. 965773
*Attorneys for Defendants*

10164 Ford Avenue, Suite A PO Box 1569
Richmond Hill, GA 31324
Telephone: (912) 756-4775
Email: matt@themurrayfirm.com